### GOLD et al. v. GROSS et al.

(City Court of New York, Trial Term. February 26, 1914.)

1. FRAUDS, STATUTE OF (§ 90*)—SALE OF GOODS—ACCEPTANCE OF PART.

    To satisfy the statute of frauds, there must be, subsequent to the sale, a delivery by the seller with intent to surrender his control and lien, and to vest the right of possession in the buyer, and an acceptance by the buyer with intent to take possession as owner, but mere words are not sufficient.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 162, 170, 171, 174–179; Dec. Dig. § 90.*]

2. FRAUDS, STATUTE OF (§ 90*)—SALE OF GOODS—ACCEPTANCE OF PART—INCOMPLETE CONTRACT OF SALE.

    Where parties on August 15th made an executory contract for the sale . and purchase of goods dependent upon whether the seller's principal would authorize a sale at the price quoted, there was no completed contract of sale, so that the delivery to the buyer at that time of a piece of the goods, so that he might see that the remainder was of like quality, and for which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

he was to be charged, was not such delivery and acceptance as to take the case out of the statute.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 162, 170, 171, 174–179; Dec. Dig. § 90.*]

3. FRAUDS, STATUTE OF (§ 90*)—PART PERFORMANCE—SALE OF GOODS—DELIVERY OF SAMPLE.
    Delivery of a sample, forming no part of the bulk sold and to be paid for,.is not such a delivery and acceptance of part of the goods sold as to constitute a symbolical delivery which will satisfy the statute.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 162, 170, 171, 174–179; Dec. Dig. § 90.*]

Action by Israel Gold and Morris Block, doing business as Gold & Block, against Francis Gross, Jr., and others doing business as Gross, Harrison & Co. The complainant was dismissed at the trial and plaintiffs move for a new trial. Motion denied.

Max Monfried, of New York City, for plaintiffs.
Robert H. Hahn, of New York City (O. B. Thomas, of New York City, of counsel), for defendants.

FINELITE, J. The plaintiffs contend by their complaint that heretofore, and about the 15th day of September, 1912, they agreed to purchase from the defendants, and the defendants agreed to sell to the plaintiffs, 4,184⅜ yards of voile at 40 cents a yard, and the defendants agreed to deliver the same to the plaintiffs on demand, and upon delivery thereof the plaintiffs agreed to pay the defendants the sum of $1,673.75. Said voile was not delivered to the plaintiffs herein, and for the failure of the defendants to deliver said goods the plaintiffs therefore claim that they have suffered damages in the sum of $1,000. The defendants, by their answer, deny these facts, and allege as a further, separate, and distinct defense to the plaintiffs' cause of action that the said alleged agreement set forth in the plaintiffs' complaint was for the sale of goods at an agreed price of more than $50, and that neither the alleged agreement, nor any note or memorandum thereof, was ever made or exists in writing, and signed or subscribed by the said defendants, who are sought to be charged thereby or by their legal agent; nor did the said purchasers accept or receive any part of such goods pursuant to such alleged agreement; nor did the buyer pay any part of the purchase money; and that any such alleged agreement is therefore, as defendants are informed and believe, void as against these defendants, pursuant to the statute in such cases made and provided. On the trial of the action the plaintiffs offered proof to the effect that a conversation was had with one of the defendants, wherein the defendants sold to the plaintiffs the merchandise in question at the price of 40 cents per yard, and that at said time a piece of said merchandise was delivered to the plaintiffs, which was taken to the plaintiffs' place of business. The court at the end of the plaintiffs' case dismissed the complaint upon the ground that the contract was void, under the statute of frauds (section 31,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

subd. 6, of article 3 of chapter 45 of Consol. Laws of 1909): (1) That the alleged contract was oral; (2) No memorandum thereof was in writing signed by the party to be charged; (3) no part of the purchase price had been paid by the vendee or even tendered; (4) that the amount involved was upwards of $50; (5) that there was no delivery or acceptance of the merchandise, or a part thereof, under a contract, and if there was any such acceptance under a contract, the same was void under the statute. It will therefore be necessary to refer to the testimony given by one of the plaintiffs as a witness on their behalf as to a delivery of part of the merchandise to take it out of the statute; also as to a contract made for purchase of said goods upon an agreed price, and the failure of the defendants to deliver the same in accordance with the alleged sample accepted by the plaintiffs. Said witness testified that the piece of merchandise was delivered to him about August 15, 1912, and was in the plaintiffs' possession at the time that the alleged contract was made on September 15, 1912, and the question arises here whether the piece of merchandise delivered was a sample of the goods as accepted by the plaintiffs, which were to be delivered should a contract be made. Referring to the conversation that the plaintiff alleged that he had with one of the defendants, he testified as follows:

"Q. Were there any goods delivered at that time? A. Yes. Q. How much? A. One piece. Q. Under what conditions? A. Subject that these goods will be the same as that when the offer is accepted (stenographer's minutes, page 16). Q. Did you receive the one piece of goods delivered to you? A. Yes. Q. Did you accept it? A. I only took this piece of goods to see that the other goods I got at 40 cents would be the same quality (stenographer's minutes, page 17)."

It further appeared from the evidence that one of the defendants informed the witness that he would have to cable on to the manufacturers in Europe to first obtain from them the acceptance of the offer made by the plaintiffs for said merchandise at 40 cents per yard. Up to this time, although the sample, as we may call it, was in the possession of the plaintiffs, the plaintiffs contend that this was a sample of the merchandise alleged to have been purchased, and that, upon acceptance of the said offer by the manufacturers, whom the defendants represented, that was a part delivery of the contract, so as to take it out of the statute of frauds; that the time of the delivery of the goods was to be made as soon as the offer was accepted by the manufacturers in Europe, and therefore the contract, as made between the plaintiffs and the defendants, was an executed one; that the failure of the defendants to deliver the goods on the acceptance of plaintiffs' offer was a breach of said contract for which the defendants would be liable in damages, and that the sample accepted by the plaintiffs was a manual delivery of the goods purchased. Before this can be accepted as the symbolic delivery of the one piece to the plaintiffs arises the question of whether the contract had been consummated between the plaintiffs and the defendants when said sample was taken by the plaintiffs. It is therefore necessary to further refer to the testimony of the witness in reference to the question here in-

volved. It appears that the defendants had received a cablegram from the manufacturers of said merchandise, and thereupon telephoned to the plaintiffs on the 15th day of September, 1913, when the following conversation took place:

"Q. Now, state what that conversation was? A. He told me that the manufacturers had agreed to accept the 40 cents, and that I should come and take these goods, and I told him I would be there in an hour and take the goods (stenographer's minutes, pp. 3, 4). Q. Do you remember any other thing said at that time over the phone? A. Nothing; except that he wants me to take these goods, and I told him I would go down an hour later. When I came down I asked Mr. Lovel, 'Where is the goods?' 'Why, the goods have been sold' (stenographer's minutes, p. 4). Q. What did you say about the piece you had? A. That will be charged up. The balance will follow this piece here, and the balance we have in stock here will follow (stenographer's minutes, p. 12)."

[1] As appears from this testimony, on the 15th day of September, 1912, no contract in law to take the case out of the statute has yet been proven. To satisfy the statute there must be a delivery by the vendor, with intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter with the intent of taking possession as owner. It can only be satisfied by something done subsequent to the sale unequivocally indicating the mutual intentions of the parties. Mere words are not sufficient. The acts of the parties must be of such a character as to unequivocally place the property within the power and under the exclusive dominion of the buyer. This is elementary law as to the doctrine that it has carried the principle of constructive delivery to the utmost limit. So long as the seller preserves his control over the goods so as to retain his lien, he prevents the vendee from accepting and receiving them as his own within the meaning of the statute. Nichols v. Clark, 40 Misc. Rep. 107–109, 81 N. Y. Supp. 262. It further appears in said minutes, in reference to the 15th day of September, 1912, when the telephonic communication was had between the plaintiffs and the defendants, as follows:

"Q. Now, state the balance of the conversation you had with Mr. Lovel on or about the 15th of September. A. Simply that he called me up on the telephone and said the goods were mine, that is, the balance I should take of the lot there. I says, '*I will be down at 11 o'clock and make the arrangements*' (stenographer's minutes, p. 27). Q. What was your agreement in this telephonic communication? A. That I take the goods out. Q. Was there anything said about paying for them? A. Nothing was told to me about paying for them. Q. No agreement made as to when payment should be made or on what terms the goods were to be taken, or anything of the kind? A. *Not until we went down to the credit man* (stenographer's minutes, p. 28). Q. Then it was after he told you the goods were sold that you went down to the credit man, is that right? A. Yes (stenographer's minutes, p. 29). Q. Well, what conversation was then had? A. I spoke to the credit man and asked him, when Mr. Lovel went downstairs with me, and we talked over the amount of credit; what credit they would give the firm of Gold & Block. Mr. Stermeyer opens up his books, and he says that the highest he can go is $1,000 credit, and the balance will have to be in cash (stenographer's minutes, pp. 10 and 11). Q. Now, tell me again what you went down there for? A. To see that everything went through all right; that is, that there should not be any hitch in the credit. Q. Hitch in the credit? A.

Yes. Q. Anything else? A. No, just the hitch in the credit. Q. Did˜you go down to agree on terms? A. *We went down to agree on terms* (stenographer's minutes, p. 30)."

[2] From this conversation it is evident that the terms for the purchase of the property and the credit that the plaintiffs desired to receive on said purchase had not as yet been agreed upon; so therefore the symbolic delivery of the one piece of merchandise in the possession of the plaintiff was not a sample of the whole purchase, to take the case out of the statute of frauds. The act subsequent to the alleged sale does not show the change of ownership, but quite to the contrary. Mere words are not enough, and there were no words even sufficient to satisfy the statute. From the evidence adduced, no change of possession had taken place, no actual change by fact or word. The minds of the parties had not agreed upon a contract. It was executory in reference to the sale of the merchandise. From August 15th to September 15th, when the last conversation was had between the plaintiff and the defendants, no contract had been consummated, so therefore, to take the case out of the statute, there must be an entire contract of sale by sample, and sample of goods delivered after the entire contract had been consummated, which would take the case out of the statute. Even at this last date, to wit, September 15th, the sale was not complete. The question as to credit was not agreed upon, and it goes without saying that the defendants would not have the right to deliver the manufacturers' merchandise without an agreement as to payment had first been concluded. The sale was only conditional on ascertaining the fact of the manufacturers' acceptance of the price. There could have been no delivery at that time, because a contract of sale was not perfected. The plaintiffs knew from the conversation had with the defendants that when one of the plaintiffs called at the place of business of the defendants he was informed that the goods were sold; and after this information was conveyed to him, then for the first time did they go before the credit man and see what credit the plaintiffs would be allowed. This in itself was empty ceremony. There was no necessity to ascertain from the credit man what credit he would allow the plaintiffs on the purchase of merchandise if the plaintiffs and the defendants had already agreed upon and consummated a contract for the purchase of the merchandise. The taking of the piece of goods which the plaintiffs retained, and which was to be charged for by the defendants on August 15, 1912, was not and could not be construed as a delivery of the purchase, as the contract, as to its conditions and agreements, was still open on the 15th of September, 1912. The defendants never intended, nor could it be in reason anticipated, that they would part with the merchandise without payment therefor, and the first reference to payment was had on the 15th day of September, 1912, before the credit man of the defendants. The property was still under the control of the defendants, and no delivery was made to the plaintiffs, actual or symbolical. The bargain was not binding until the acceptance by the manufacturers as to the price offered, and if this one piece of goods was taken to be construed into a sample, it was taken not as a delivery or the acceptance of the merchandise. Un-

til a contract is consummated the defendants would have the right to withdraw any offer made by them.

[3] There must be an actual delivery by sample or by the total amount of the merchandise before it can be said that a contract had been consummated for which a party would have been liable for nondelivery. It is not the mere taking of a sample that would amount to a delivery. If a symbolical delivery is relied on, it must appear to be a delivery by the vendor and an acceptance by the vendee with a view to change the possession. Carver v. Lane et al., 4 E. D. Smith, 168.

In Johnson v. Smith (N. Y. N. P. Cases [2d Ed.] p. 81), where it was held, upon a contract for the sale of sugar, delivery of the export entry is not a delivery of the article sold, but in the meaning of the statute. Neither is delivery of samples, forming no part of the bulk sold. Where there is an agreement on a sale that the vendee shall give notes with an indorser of four and five months, upon a demand of such notes and a total disaffirmance of the contract by the vendee, general indebitatus assumpsit lies. This was an action in assumpsit for goods sold and delivered, and the plea was nonassumpsit. It appeared from the facts that a conversation took place on the 23d day of June, 1906, between the plaintiff and defendant concerning the sale of sugars, in which conversation it was ultimately agreed that the plaintiff would sell them to the defendant at $11.50 per hundredweight, and the defendant was to give in payment his own notes at four and five months, with his uncle's indorsement; that the export entry was then delivered to him, which merely specified the price and marks of the hogsheads, and the defendant took the samples which had been accepted (which were no part of the weight), rolled them in a paper and laid them aside in the plaintiff's counting room, and promised to call and take them away the next day, which he did not do, and inquired whether the sugars might remain in the plaintiff's store a few days, which was assented to by the plaintiff. On the night of the 27th of June the store and sugar were consumed by fire. A few days afterwards a letter was written by the plaintiff to the defendant on the subject of the sale, to which the defendant replied, disavowing the contract. The defendant's counsel moved for a nonsuit on the ground that the plaintiff ought to have declared on the special contract to give notes with an indorser at four and five months, and could not declare generally for goods sold and delivered as he had done here. It was answered by the plaintiff that whenever such an agreement was made and the vendee refused to give the notes when demanded, he disaffirmed the contract as to the notes, and entitled the plaintiff to declare generally that the letters which passed between the plaintiff and the defendant subsequent to the loss of the sugar was sufficient evidence of such demand and refusal. The judge being of this opinion, the nonsuit was refused, but the point was reserved at the defendant's request. As the facts in the case had been proved by a single witness, the defendant, in order to impeach the accuracy of his recollection, offered to go into testimony to show that, from the suggestion of the defendant with reference to his uncle, it was improbable that he could

have offered him an indorser; but this was overruled by the court as being too remote an inference. The defendant then rested his defense, chiefly on two grounds: (1) That even the parol contract between the parties had not been perfected; the sale being by weight, and that weight not having been ascertained. (2) That even if the parol contract had been complete, there was nothing to take it out of the statute of frauds; that there was no sufficient evidence of delivery; that it constituted a symbolic delivery; something must be delivered and accepted with the express intention of constituting a delivery and saving the statute of frauds; that the delivery of a sample is not a delivery of part of the goods, but in the meaning of the statute unless the sample is considered as part of the bulk. 7 T. R. 114.

The plaintiff's counsel contended that the delivery of the export entry to the defendant was a sufficient delivery to satisfy the statute, inasmuch as it contained the marks and numbers of the hogsheads, and was therefore a designation of the goods by the vendor to the use of the vendee, and was even equivalent to the marking them by the vendee, both of which acts constituted a sufficient delivery. Ludlow v. Bowne & Eddy, 1 Johns. 17, 3 Am. Dec. 277. They also contended that the defendant's laying aside the samples was equivalent to a delivery, because he thereby withdrew the articles from the market. Thompson, J., writing for the court, said that he was of the opinion that the facts relative to storage and delivery of the export entry were put out of the question in this case by the decision of the court in the case of Bailey & Bogert v. Ostend & Ostend, 3 Johns. 421, 3 Am. Dec. 509; that the only question was whether the defendant's acts relative to the samples would constitute a delivery in law. It must appear in all cases of symbolic delivery that it was the express intention of the party to make a delivery; that here, as samples form no part of the bulk to be paid for, delivery and acceptance of them would not be a delivery and acceptance of part of the goods sold within the meaning of the statute. The courts have gone far enough with regard to symbolical delivery, and that class of cases ought not to be extended, and affirmed the verdict for the defendant. I have examined the authorities cited by the plaintiff, but in all those cases the facts therein stated do not apply here. It appears from a reading of those cases that an entire contract of sale by sample was made, and thereafter a piece of goods delivered. In those cases it rightfully held that the piece of goods, delivered after "the entire contract was consummated" took the case out of the statute.

Motion for a new trial must therefore be denied. Settle order on one day's notice.